1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIDA HERMOSILLO,<br>          OBO Minor V.M., | Case No.  1:23-cv-01467-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; ENTERING JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY; AND DIRECTING CLERK OF THE COURT TO CLOSE THIS MATTER |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | (ECF Nos. 24, 26) |

## I.

## INTRODUCTION

Aida Hermosillo on behalf of minor V.M. ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act.[1]  The matter is currently

---

[1] On October 12, 2023, a complaint in this action was filed along with a motion for appointment of Aida Hermosillo as guardian ad litem for V.M., a minor.  (ECF No. 3.)  On December 5, 2023, the Court considered that motion and appointed Aida Hermosillo as guardian ad litem for the minor.  (ECF No. 18.)

The motion for appointment of a guardian ad litem asserts that Aida Hermosillo is the parent of V.M.  (ECF No. 3 at ¶ 2.)  The motion further states that V.M. has no general guardianship, is familiar with the medical conditions of V.M. and is willing to act as her guardian ad litem.  (Id. at ¶¶ 5, 6.)  In her declaration, Ms. Hermosillo declares that she is the mother of V.M. and that V.M. is in her custody and lives with her.  (Decl. of Aida Hermosillo in Support of Appointment of Guardian Ad Litem for V.M. ¶¶ 1, 2, ECF No. 3 at p. 4.)  Ms. Hermosillo asserts that she has firsthand knowledge of the issues, facts and evidence in the case and could competently testify if called to do so.  (Id. at ¶ 1.)  She also states that she is intimately familiar with V.M.'s physical and mental disabilities.  (Id. at ¶ 3.)

before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[2]

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing the ALJ did not following the regulations in evaluating V.M.'s disability under the childhood standards and disregarded evidence of extreme limitations and failed to offer legitimate reasons to reject subjective complaints.

For the reasons explained herein, Plaintiff's Social Security appeal shall be denied.

## II.

## BACKGROUND

### A.    Procedural History

Plaintiff protectively filed an application for supplemental security income on March 9, 2021. (AR 54.)   Plaintiff's application was initially denied on May 20, 2021, and denied upon reconsideration on September 30, 2021.   (AR 69-72, 82-5.)   Plaintiff requested and received a hearing before Administrative Law Judge Peter J. Baum ("the ALJ").   Plaintiff appeared for a telephonic hearing on August 15, 2022.   (AR 28-43.)   On August 31, 2022, the ALJ issued a decision finding that Plaintiff was not disabled.   (AR 12-22.)   On August 11, 2023, the Appeals Council denied Plaintiff's request for review.   (AR 1-3.)

### B.    The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the

_____

However, the motion for summary judgment filed in this action states that Ms. Hermosilla is bringing this action on behalf of her granddaughter V.M.  (ECF No. 24 at 1.)  Further, the administrative record states that Ms. Hermosilla is V.M.'s grandmother and legal guardian.  (AR 15.)

The Court is very familiar with counsel as he litigates often in this Court and this is not the first time that such an error has been noted in counsel's pleadings.  Most recently the Court addressed a pleading error in Reither v. Commissioner of Social Security, No. 1:23-cv-01333-SAB (E.D. Cal.) (see Order Denying Plaintiff's Motion for Summary Judgment, 2 n.3.)  Based on the Court's familiarity with counsel, it appears to reuse prior motions and fails to careful proof his current work and it is not unusual to find inaccurate or incorrect information within his pleadings.

Based on the information before the Court, the Court finds that Ms. Hermosilla, as the grandmother and guardian of V.M., is a proper guardian ad litem.  However, counsel is admonished that he should use more care in preparing and reviewing his pleadings to avoid such errors in the future.

[2] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (See ECF Nos. 8, 12, 23.)

decision, August 31, 2022:

1.  Plaintiff was an adolescent on March 9, 2021, the date application was filed, and is currently an adolescent.

2.  Plaintiff has not engaged in substantial gainful activity since March 9, 2021, the application date.

3.  Plaintiff has the following severe impairment: borderline intellectual functioning.

4.  Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 416.924, 416.925 and 416.926).

5.  Plaintiff does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR §§ 416.924(d) and 416.926a).

6.  Plaintiff has not been disabled, as defined in the Social Security Act, since March 9, 2021, the date the application was filed.

(AR 16-22.)

### III.

### LEGAL STANDARD

**A.    The Disability Evaluation Under Childhood Standards**

An individual under the age of eighteen will be considered disabled if she has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906.  The Social Security regulations provide a three-step process in determining whether a child is disabled. See 20 C.F.R. § 416.924.  First, the ALJ must determine whether the child is engaged in substantial gainful activity.  20 C.F.R. § 416.924(a).  If the child is not engaged in substantial gainful activity, then the analysis proceeds to step two.  Step two requires the ALJ to determine whether the child's impairment or combination of impairments is severe.  Id.  The child will not be found to have a severe impairment if it constitutes a "slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c).  However, if there is

a finding of severe impairment, the analysis proceeds to the final step.  Step three requires the ALJ to determine whether the impairment or combination of impairments "meets, medically equals or functionally equals" the severity of a set of criteria for an impairment in the Listing of Impairments ("listings").  20 C.F.R. § 416.924(d).

If an impairment does not meet the requirements of, or is not medically equal to, a listed impairment, the claimant may still be disabled if his impairment or combination of impairments is found to be "functionally equivalent" to a listed impairment.  In child disability cases, a "whole child approach" is used to determine functional equivalence.  R.S. by & Through Herrera v. Berryhill, 357 F.Supp. 3d 1033, 1037 (C.D. Cal. 2019).  That is, the ALJ considers all of the child's activities, "everything [the child does] at home, at school, and in [the] community."  20 C.F.R. § 416.926a(b).  Functional equivalence is measured by assessing the claimant's ability to function in the following six domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do": (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being.  20 C.F.R. §§ 416.926a(b)(1)(i)–(vi).  Limitations in functioning must result from the child's medically determinable impairments.  See 20 C.F.R. § 416.924a (describing considerations for determining disability for children).  An impairment or combination of impairments is functionally equivalent to a listing if it results in "marked" limitations in two areas, or an "extreme" limitation in one area of functioning.  20 C.F.R. § 416.926a(a).

**B.    Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant

evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006). Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff argues two issues on appeal: 1) the ALJ failed to follow the regulations in evaluating V.M.'s disability under the childhood standards and disregarded evidence of extreme limitations in the domain of acquiring and using information; and 2) the ALJ failed to offer legitimate reasons to

1    reject third party witness testimony.

2        **A.    Whether ALJ Properly Applied Childhood Disability Standard**

3        Plaintiff contends that competent evidence confirms that V.E. was assessed to be greater

4    than three standard deviations below the mean in acquiring and using information.  (Pl.'s Motion

5    for Summary Judgment ("Mot.") 17, ECF No. 24.)  Plaintiff argues that the ALJ noted that her

6    February 2021 IEP stated that Plaintiff required accommodations with her classwork and that she

7    was without accommodations for physical fitness and played on the softball team but ignored that

8    the same document confirms that she was a full five grade levels behind in reading and possessed

9    a comprehension rate of less than 50 percent.  (Id. at 17-18.)  Plaintiff argues that the ALJ ignored

10   significant probative evidence such as Plaintiff's below grade level reading and math scores and

11   her comprehension rate of less than 50 percent.  (Id. at 18.)

12       Defendant counters that Plaintiff's argument that she should have been found to have an

13   extreme, as opposed to marked, limitation in acquiring and using information lacks merit and

14   substantial evidence supports the ALJ's finding in this domain.  (Def.'s Opp. ("Opp.") 5, ECF No.

15   26.)  Defendant argues that Plaintiff does not contend that she is more limited than the ALJ found

16   in the areas of areas of attending and completing tasks; interacting and relating with others; caring

17   for herself; moving about and manipulating objects; or health and physical well-being.  (Opp. at 5-

18   6.)

19       Defendant asserts that a marked limitation corresponds with two standard deviations below

20   the mean which would be below 70 on a standard IQ test and three standard deviations would be

21   an IQ of 50 or lower.  (Opp. at 6 (citing 20 C.F.R. §§ 416.926a(e)(2)(iii), (e)(3)(iii).)  Defendant

22   argues that as the ALJ considered, July 2020 testing revealed that Plaintiff had a verbal IQ score of

23   81, performance IQ of 81, and verbal IQ of 83, and a non-verbal IQ of 83 and an August 2021

24   verbal IQ score of 78 and verbal comprehension score of 75.  Defendant argues that as a result, the

25   ALJ found that Plaintiff had borderline intellectual functioning as a severe impairment and

26   considered Plaintiff's test scores in finding that she had marked limitations in acquiring and using

27   information.  Defendant asserts that no single piece of evidence, including test scores, can establish

28   an extreme limitation in any domain and although Dr. Seward's testing indicated that math and

spelling might have been three standard deviations below the mean, these are isolated areas and not indicative of Plaintiff's overall functioning.  (Opp. at 6.)

Defendant contends that the ALJ's finding is supported by the testimony and opinions of Dr. Bradford and the findings of the reviewing physicians.  Dr. Bradford reviewed the entire record and testified to a marked, but not extreme, limitation in this domain.  (Id. at 6.)  Defendant argues that the ALJ's reliance on Dr. Bradford's testimony is consistent with Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1014 (9th Cir. 2003), which directs an ALJ to obtain medical expert review of the record in a child disability case.  (Opp. at 6-7.)  Further, Defendant argues that the ALJ found that Dr. Bradford's opinion was also consistent with Dr. Seward's opinion and test results.  Defendant contends that Dr. Bradford and the ALJ looked at the "whole child" and found that Plaintiff's ability to acquire and use information was markedly, but not extremely limited. Therefore, Defendant states that the ALJ properly found that Plaintiff did not have an extreme limitation based on the record as a whole despite Plaintiff's test scores.  (Id. at 7.)

Defendant also assets that while Plaintiff argues that her math skills were at third grade level, the ALJ considered that her IEP reflects that she was one of the best math students in math and frequently assists other kids in her class with math, volunteered, and participated when called on.  Similarly, Defendant contends that while Plaintiff argues that her reading skills were first grade level, her 2022 IEP reported she was passing English with a 4.0 and her teacher noted that Plaintiff's academic difficulties were evident but not debilitating as she had many other strengths in other areas.  Defendant argues that looking at the whole child, the evidence supports the ALJ's determination at the most, Plaintiff had marked limitations in acquiring and using information.  (Id.)

Finally, Defendant argues that while Plaintiff's IQ scores indicated that her overall intelligence functioning fell in the upper borderline deficient range, the ALJ also considered that she was able to maintain a 3.2 GPA, and her primary reason for doing so was so she could continue to play travel softball at a competitive level.  (Id. at 7.)

1.     Rating Severity of Limitations in the Domains/Functional Equivalence

Regarding functional equivalence, the ALJ must assess the interactive and cumulative effects of all the impairments supported by the evidence, both severe and nonsevere.  20 C.F.R. §

416.926a(a).  The ALJ is to consider all relevant factors, including but not limited to: (1) how well the child can initiate and sustain activities, how much extra help she needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) the effects of the child's medications or other treatment.  Id. (citing 20 C.F.R. §§ 416.924a, 416.924b, 416.929).  The more help or support of any kind that a child receives beyond what would be expected for children the same age without impairments, the less independent the child is in functioning, and the more severe the limitation will be determined to be.  SSR 09-1P, at *7.

A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2).  It is "more than moderate" but "less than extreme."  Id.  A child's "day-to-day functioning may be seriously limited when [his or her] impairment(s) limits only one activity or when the interactive and cumulative effects of [his or her] impairment(s) limit several activities."  Id.  It "is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."[3]  Id.  Thus, the Commissioner generally considers a child to have a "marked" limitation when he has a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and [their] day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. § 416.926a(e)(2)(iii).  Importantly, the Commissioner notes that test scores alone do not establish marked or extreme limitation in a domain, 20 C.F.R. §§ 416.924a(a)(1)(ii), 20 C.F.R. 416.926a(e)(4), as no single piece of information taken in isolation can establish whether the child has a "marked" limitation in a domain, 20 C.F.R. § 416.926a(e)(4)(i).

SSR 09-1P explains the multitude of factors and evidence that must be considered in evaluating the severity of the functional effect a claimant's impairment(s) has on each functional

---

[3] An "extreme" limitation, by comparison, "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3).  It is the rating given to "the worst limitations."  Id.  Nonetheless, it "does not necessarily mean a total lack or loss of ability to function."  Rather, it is "the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least three standard deviations below the mean."  20 C.F.R. § 416.926a(e)(3)(i).

domain.  It provides that

> To determine whether there is a "marked" or an "extreme" limitation in a domain, [the ALJ] use[s] a picture constructed of the child's functioning in each domain. This last step in the "whole child" approach summarizes everything [the ALJ] know[s] about a child's limited activities.  The rating of limitation in a domain is then based on the answers to these questions:
>
> 1. How many of the child's activities in the domain are limited (for example, one, few, several, many, or all)?
>
> 2. How important are the limited activities to the child's age-appropriate functioning (for example, basic, marginally important, or essential)?
>
> 3. How frequently do the activities occur and how frequently are they limited (for example, daily, once a week, or only occasionally)?
>
> 4. Where do the limitations occur (for example, only at home or in all settings)?
>
> 5. What factors are involved in the limited activities (for example, does the child receive support from a person, medication, treatment, device, or structured/supportive setting)?

Id. at * 7–10.  Notwithstanding the aforementioned questions, however, SSR 09-1p cautions that "there is no set formula for applying these considerations in each case.  Id. at *9.  Instead, it stresses the importance of considering the longitudinal record when evaluating the severity of the child's limitations.  Id.  Further, an ALJ is not required to discuss all of the considerations in their determinations and decisions but must only provide sufficient detail so that a subsequent reviewer can understand how the ALJ made his findings.  Id. at *3.

    2.  <u>Acquiring and Using Information</u>

In this domain, the Commissioner considers how well the claimant acquires and learns information and how well the claimant uses the information learned.  20 C.F.R. § 416.926a(g). Plaintiff is an adolescent, and the age group descriptors provide:

> In middle and high school, you should continue to demonstrate what you have learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments).  You should also be able to use what you have learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation).  You should be able to comprehend and convey both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas).  You should also learn to apply these skills in practical ways that will help you enter the workplace after you finish school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer).

1    20 C.F.R. § 416.926a(g)(2)(v).

2
3         The regulations also provide examples of limited functioning in acquiring and using
     information.
4
5         The following examples describe some limitations we may consider in this domain.
          Your limitations may be different from the ones listed here.  Also, the examples do
6         not necessarily describe a "marked" or "extreme" limitation.  Whether an example
          applies in your case may depend on your age and developmental stage; e.g., an
7         example below may describe a limitation in an older child, but not a limitation in a
          younger one.  As in any case, your limitations must result from your medically
8         determinable impairment(s).  However, we will consider all of the relevant
          information in your case record when we decide whether your medically
9         determinable impairment(s) results in a "marked" or "extreme" limitation in this
          domain.
10
          (20) You do not demonstrate understanding of words about space, size, or time; e.g.,
11             in/under, big/little, morning/night.
          (ii)  You cannot rhyme words or the sounds in words.
12        (iii) You have difficulty recalling important things you learned in school yesterday.
          (iv) You have difficulty solving mathematics questions or computing arithmetic
13             answers.
          (v)   You talk only in short, simple sentences and have difficulty explaining what
14             you mean.

15   20 C.F.R. § 416.926a(g)(3).

16        3.   Discussion

17        The ALJ found that Plaintiff had a marked impairment in understanding, remembering, and

18   applying information, mild limitation in interacting with others, moderate limitations in

19   concentrating, persisting, and maintaining pace, and a moderate limitation in adapting and

20   managing herself.  (AR 17.)  Plaintiff only challenges the finding that Plaintiff was only markedly

21   limited in acquiring and using information.  (Mot. 3, 15-18; Opp. 5.)

22        In so finding, the ALJ noted that Plaintiff obtained a full scale I.Q score of 81 with a verbal

23   IQ of 83 and a non-verbal IQ of 81 in a July 6, 2020 psychological eligibility evaluation by Dr.

24   Myers to determine her intellectual and adaptive functioning.  (AR 17, 20, 312).  Plaintiff presented

25   as a quiet and reserved teenager, was receptive to questions, engaged in activities and demonstrated

26   appropriate joint attention. She was thoughtful in her responses, and adequately engaged with Dr.

27   Myers.  Plaintiff appeared responsive and engaged with more difficult tasks, her speech was clear

28   and coherent, and she was playful and joked.  (AR 20, 314.)

10

1   The evaluation notes that scores of 70 or below are considered indicative of cognitive

2   deficiency and a review of Plaintiff's scores indicate all are above 70. (AR 19, 312.) Dr. Myers

3   found that Plaintiff's scores placed her cognitive functioning within the low average range but noted

4   that there was some variability within each domain. Both nonverbal and verbal IQ fell within the

5   low average range. (AR 312.) Within the nonverbal domain, fluid reasoning and knowledge skills

6   fell within the borderline deficient range demonstrating cognitive deficits in nonverbal reasoning

7   and retention of information. (AR 312-13.) Within the verbal domain, Plaintiffs knowledge and

8   visual spatial skills both fell within the borderline deficient range. Quantitative reasoning and visual

9   spatial processing skills fell within the low average range. Her working memory skills were noted

10  to be a strength for her, and she attained a score in the average range. (AR 20, 313.) The examiner

11  also noted Plaintiff was assessed on February 11, 2020, and the results differed from the current

12  testing placing her cognitive skills in the below average range. Ms. Myers opined that the differing

13  results may be attributed to unknown external or internal factors that limited her focus and

14  performance during that evaluation. (AR 314.)

15  Ms. Myers concluded,

16  In the present evaluation, V[ ] obtained an FSIQ within the average range on the SB-
    5, demonstrating adequate cognitive functioning at this time. V[ ]'s Nonverbal IQ
17  and Verbal IQ both fell with the low average range. V[ ]'s working memory skills
    were a personal strength, while she had more difficulty with tasks that required use
18  of inductive and deductive reasoning (FR; SS-79, borderline deficient range) and
    retention of information (KN; SS;72, borderline deficient range). On adaptive
19  measures, there were no significant discrepancies between domains, with all her
    adaptive skills falling within the average range. V[ ]'s GAC of 90, places her
20  adaptive skills solidly in the average range and at age based expectations.

21  Per results of current testing, V[ ]'s FSIQ of 81, combined with her reported average
    adaptive skills rule out an Intellectual Disability. While V[ ] has cognitive
22  weaknesses (e.g., knowledge), she also has strengths (e.g., working memory) and
    sufficient capacity within many cognitive and adaptive domains. That being said,
23  V[ ] demonstrates a limited frustration tolerance particularly when more complex
    academic demands are placed on her. It would be helpful for V[ ] to receive support
24  that could help her learn how to organize and structure her academic work.
    Furthermore, V[ ] would benefit from intervention and support to help her manage
25  her frustration tolerance and low self-esteem related to her intelligence and academic
    performance.
26
    (AR 20, 315.)
27
    The ALJ also considered that Plaintiff has an IEP and was diagnosed with borderline
28

intellectual functioning (AR 17, 308.)  Her grandmother testified that Plaintiff needed constant reminding and occasionally forgot to turn in her assignments (AR 34-35), but her February 3, 2022 IEP states kept her grades up with a 3.2 GPA and was the best math student in her class, frequently helping other students.   (AR 17, 555.)  The ALJ also considered that Plaintiff injured herself in sports but was able to carry out and play competitive softball year-round with back-to-back games (AR 17, 340.)

While Plaintiff argues that the ALJ failed to consider the whole child and ignored evidence suggesting greater limitations, Plaintiff ignores the evidence of Plaintiff's overall functionality and focuses solely on Plaintiffs' grade level functioning which she argues is more than three standard deviations below the norm.  However, as discussed supra, test scores alone do not establish marked or extreme limitation in a domain, 20 C.F.R. §§ 416.924a(a)(1)(ii), 20 C.F.R. 416.926a(e)(4), as no single piece of information taken in isolation can establish whether the child has a "marked" limitation in a domain, 20 C.F.R. § 416.926a(e)(4)(i).  Further, the Commissioner generally considers a child to have a "marked" limitation when he has a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, **and [their] day-to-day functioning in domain-related activities is consistent with that score."** 20 C.F.R. § 416.926a(e)(2)(iii) (emphasis added).

The ALJ considered the testimony of a medical expert, Dr. Bradford, who testified at the August 15, 2022 hearing.  (AR 19, 38-42.)  Dr. Bradford opined that Plaintiff did not meet or functionally equal any of the relevant childhood listings.  He also testified that Plaintiff's determinable impairments were borderline intellectual functioning and a history of a broken arm. Dr. Bradford noted that Plaintiff's IQ scores ranged in the 70s to low 80s and indicated that she had borderline intellectual functioning which caused a marked impairment in her ability to acquire and use information.  (AR 19, 40, 42.)

The ALJ also considered that on August 17, 2021, Plaintiff had a comprehensive psychological examination by Dr. Seward.  (AR 20, 21, 329-34.)  Based on testing, Dr. Seward found that there is a 95% chance that Plaintiff's true intellectual functioning fall within the 74 to 84

range.  (AR 20, 331.)  Plaintiff's testing scores placed her within the borderline-average range of intellectual functioning compared to same age peers.  Despite her performance in the domain, she achieved a score that placed her within the borderline range of intellectual functioning compared to same age peers and this may be indicative of an intellectual disability.  (AR 332.)  Testing of basic academic skills of word reading, sentence comprehension, spelling, and math computation suggested deficits across all four measured academic areas, and she is well below her grade level in each area.  Plaintiff was diagnosed with borderline intellectual functioning.  (AR 20, 333.)

Dr. Seward opined that Plaintiff was not significantly limited in her ability to engage in and/or perform age-appropriate physical activity.  She was mildly limited in her ability to communicate by understanding, initiating and using language in an age-appropriate manner; engage in and perform age-appropriate self-care activities; integrate socially with peers and adults in an age appropriate manner; and to engage in, perform, and sustain an activity for a period of time that is age appropriate and at a pace that is age appropriate.  Plaintiff is moderately limited in her ability to respond to increasingly complex requests, instructions, or questions in an age-appropriate manner.  (AR 21, 333-34.)  The ALJ found that Dr. Seward's opinion was most persuasive as it was generally supportive of the longitudinal record.  In example, the ALJ noted that Plaintiff's IQ scores indicated borderline functioning, which resulted in classroom accommodations in the form of an IEP and assistance outside the classroom.  Although her cognitive skills were borderline, Plaintiff maintained good grades, was tutoring her peers in math, and was a dedicated student, turning in her assignments, and participating without behavioral issues.  (AR 21, 555.)

Although Plaintiff argues that the ALJ did not acknowledge that Plaintiff was a more than three standard deviations below the standard in reading, math, and spelling, the ALJ did consider that Plaintiff's math teacher and educational specialist completed a teacher questionnaire and reported that Plaintiff read at the first grade level, and was on the third-grade level in math, but does very well with classroom participation.  (AR 21, 258.)  The ALJ considered that Mr. Weaver reported that Plaintiff struggles with new material and multistep directions, occasionally forgets her homework, but always attends class and has no problems interacting and relating to others, moving about or manipulating objects, or caring for herself.  (AR 21, 259-60.)  Further, Mr. Weaver

1    indicated that Plaintiff's academic difficulties were evident, but not debilitating as she had strengths

2    in other areas.[4]  (AR 21-22, 259-60.)  The ALJ found this opinion somewhat persuasive.  (AR 21-

3    22.)

4         The Court finds that the ALJ's finding that Plaintiff was markedly limited in the area of

5    acquiring and using information is supported by substantial evidence in the record.

6         **B.    Whether ALJ Erred in Assessing Lay Witness Testimony**

7         Plaintiff argues that the ALJ did not properly assess the testimony of her grandmother.

8    (Mot. at 19.)  Plaintiff contends that after finding Plaintiff's medically determinable impairments

9    could reasonably be expected to cause the alleged symptoms, and that the allegations concerning

10   the intensity, persistence, and limiting effects were not entirely consistent with the medical evidence

11   and other evidence in the record, he discussed some evidence, but ignored the evidence addressed

12   above.  Further, Plaintiff also argues that the ALJ erred by failing to offer a single germane reason

13   to reject the symptom complaints.  (Id.)  Plaintiff contends that the ALJ did not offer an explanation

14   as to what undermines her grandmother's testimony regarding Plaintiff's limitations.  (Id. at 20.)

15   Further, Plaintiff asserts that the ALJ did not address Mr. Weaver's testimony that Plaintiff was

16   more than three standard deviations below the mean in acquiring and using information, but focused

17   on the fact that the report noted no difficulties in other domains.  Plaintiff asserts that this fails to

18   provide any insight into why the ALJ considered the domain of acquiring and using information to

19   only be markedly impaired.  Plaintiff states that this error requires remand.  (Id. at 21.)

20        Defendant counters that, under the new regulations, the ALJ has no obligation to discuss

21   this evidence.  Defendant states that regardless, the ALJ did explicitly consider the testimony and

22   form submitted by Plaintiff's grandmother but held that her reports are contradictory to the evidence

23   to the extent that they were inconsistent with the ALJ's findings.  (Opp. at 8.)  Further, Defendant

24   asserts that the ALJ did consider Mr. Weaver's questionnaire and that Plaintiff is incorrect in

25   ---
[4] Specifically, Mr. Weaver noted that in acquiring and using information, Plaintiff has no problem comprehending

26   oral instructions; understanding school and content vocabulary; and understanding and participating in class
     discussions.  She has a slight problem in reading and comprehending written material, providing organized oral

27   explanations and adequate descriptions, and recalling and applying previously learned material.  She has an obvious
     problem in comprehending and doing math problems, expressing ideas in written form, learning new material, and
     applying problem solving skills in class discussions.  Her teacher noted that Plaintiff does very well with content and

28   participation, but can often struggle with new material, especially if it is multiple steps.  (AR 259.)

asserting that Mr. Weaver reporting that Plaintiff was three standard deviations below the mean. Rather, Defendant argues that Mr. Weaver reporting that Plaintiff was in the seventh grade, was receiving assistance in math and reading, and was performing at the third grade and first grade levels. Defendant contends that substantial evidence supports the ALJ's decision. (Id. at 9.)

### 1. Standard for Evaluating Lay Witness Testimony

The Ninth Circuit has held that "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Tobeler v. Colvin, 749 F.3d 830, 832 (9th Cir. 2014) (citations omitted); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). In giving "germane reasons" for disregarding a lay witness's testimony, the ALJ "should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Wilson v. Berryhill, No. 17-cv-05385-PJH, 2018 WL 6421874, at *12 (N.D. Cal. Dec. 6, 2018). Germane reasons must also be specific. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).

### 2. Discussion

Plaintiff alleges that the ALJ provided no discussion of the day-to-day functioning in domain related activities and while he acknowledged her grandmother's testimony, he did not properly assess the testimony and failed to offer a single germane reason to reject the subjective complaints. (Mot. at 19.) In his opinion, the ALJ did consider the child function report completed by Plaintiff's grandmother.

> In March 2021, the claimant's grandmother, Aida Hermosillo, completed a Child Function Report, Age 12-18th Birthday (Exhibit 2E). She explained the claimant had no difficulties talking, attended school full-time, and was not limited physically or socially (Exhibit 2E, pp. 3-6). However, [s]he cannot read, spell words, multiply, divide, understand money, or carry out simple instructions (Exhibit 2E, p. 5). [Sh]e also had a limited attention span and struggled to stick with a task (Exhibit 2E, p. 8).

(AR 19.)

On March 12, 2021, Plaintiff's grandmother completed a function report-child. (AR 221.)

She reported that Plaintiff wears glasses.  (AR 222.)  She attends school fulltime.  Ms. Hermosillo marked the box that states Plaintiff's ability to communicate is limited but did not identify how it was limited.  (AR 224.)  Plaintiff has a limitation in understanding and remembering what she learns.  She cannot read and understand sentences in comics and cartoons, or books magazines or newspapers; cannot spell words of more than four letters; cannot multiply numbers over 10; cannot understand money and make correct change; and cannot understand, carryout, and remember simple instructions.  (AR 225.)  Plaintiff's ability to pay attention and stick with a task is limited.  She cannot keep busy on her own, finish things she starts, complete homework, complete homework on time, or complete chores most of the time.  (AR 227.)  Plaintiff has no problem hearing, talking, and physical ability, social activities and behavior are not limited, ability to care for her personal needs and safety are not limited.  (AR 222-23, 225-27.)

The ALJ also considered Plaintiff's grandmother's testimony at the August telephonic hearing.

> During the August 2022 telephonic hearing, Aida Hermosillo, the minor claimant's grandmother and guardian, testified on her behalf (Hearing Transcript).  She explained the claimant was in ninth grade, lived with her and her husband, had an IEP which was modified every year.  She has difficulty with multi-step instructions and her short term memory, but is able to complete tasks independently with some reminding.  She needs reminders to brush her teeth and move the laundry from the washer to the dryer.  Although the claimant has difficulty keeping pace in school, she forgets to hand in her assignments, but completes them.  She is keeping up her grades, so she can continue to play with the high school's softball team.  Despite the concentration and learning difficulties, the claimant did not take any medication (Hearing Transcript).

(AR 18.)

Ms. Hermosillo testified at the August 15, 2022 hearing.  (AR 32-7.)  Plaintiff lives with Ms. Hermosillo and her husband, and she was a freshman in high school on the date of the hearing.  (AR 32.)  Plaintiff is a year behind in school because she was held back in kindergarten.  It did not help because Plaintiff can never be on task at grade level.  (AR 35.)  Plaintiff has an IEP which is reviewed once a year and Plaintiff is not in full time Special Education, but Ms. Hermosillo believed that some assistance was provided for Plaintiff.  (AR 32.)  Ms. Hermosillo believed that Plaintiff was pulled out for two classes in middle school but was in regular classes for the remainder of the day.  (AR 32.)

If Ms. Hermosillo asks Plaintiff to do two things, only one will get done.  She believes that Plaintiff has short term memory problems because if she asks Plaintiff to put clothes in the washer and then put them in the dryer, Plaintiff will put the clothes in the washer and when asked later if she heard that she was to put them in the dryer, Plaintiff will say no.  Plaintiff tries to get away with not washing her face and brushing her teeth before going to bed and needs constant reminders.  Plaintiff does not take any medications.  (AR 34.)

Ms. Hermosillo would get calls the prior year from Plaintiff's science teacher.  Ms. Hermosillo would suggest that maybe Plaintiff would need some extra help.  Plaintiff would remember to complete her assignments but would forget to turn them in.  Plaintiff has to keep passing grades because she was on the school softball team, so she tries hard to stay on task.  (AR 35.)

The ALJ stated that Plaintiff's math teacher says that Plaintiff has 100 percent of her assignments done and is one of the best students in class and her science teacher also said that 100 percent of Plaintiff's assignments were turned in.  Ms. Hermosillo stated that in science Plaintiff was not turning her assignments in, but in math there was an extra teacher helping them finish math.  (AR 36.)  The science teacher would call Ms. Hermosillo and give Plaintiff the opportunity to turn her assignments in for a grade so she would not be dropped off the school team.  (AR 36-7.)  Ms. Hermosillo would talk to Plaintiff and then she would turn her work in and bring her grade back up.  (AR 37.)  However, the ALJ noted that the science teacher stated that Plaintiff does great getting her work turned in.  Plaintiff's attorney noted that in April of 2021 there was a note that Plaintiff does well with attendance but forgets to turn in her homework.  The ALJ noted that the most recent report does not say any such thing.  (AR 38.)

Plaintiff argues that the opinion fails to explain how the ALJ found her to be only markedly limited despite her grandmother's testimony of extreme limitations in acquiring and using information.  (Mot. at 19.)  However, the ALJ considered that Plaintiff required accommodations for her classwork but was without accommodation for physical fitness and played on the softball team.  (AR 19, 204.)   The ALJ also discussed the April 2021 teacher questionnaire by Mr. Weaver, her math teacher, addressed supra, in which he noted that Plaintiff's academic difficulties were

evident, but they were not debilitating as she had strengths in other areas.  (AR 21-22, 258-65.) Further, despite Ms. Hermosillo's testimony that Plaintiff was unable to read and was limited in her math skills, the ALJ considered that her February 2022 IEP noted that she had a GPA of 3.2, was one of the best students in math and often volunteers to help other students.  (AR 21, 555.)  This is a germane reason to discount Ms. Hermosillo's testimony regarding the severity of Plaintiff's symptoms.

Plaintiff also argues that the ALJ erred by failing to address Mr. Weaver's testimony that Plaintiff was more than three standard deviations below the mean in acquiring and using information due to being below grade level.  The ALJ did consider that Mr. Weaver stated Plaintiff was in the seventh grade but reads on a first-grade level and math is on a second-grade level.  Mr. Weaver stated that Plaintiff struggles with new material and multistep directions.  (AR 21, 258-59.) The ALJ also noted that Mr. Weaver stated that Plaintiff's academic difficulties were evident, but not debilitating as she had many strengths in other areas, noting that she participates in class, has no difficulty relating to and interacting with others, moving about or manipulating objects, and caring for herself.  (AR 21-22, 259-63.)

Plaintiff argues that Mr. Weaver's testimony that Plaintiff is below grade level establishes that she is three standard deviations below the norm and therefore her impairment in acquiring and using information is extreme.  The ALJ found that, although not a medical opinion, Mr. Weaver's testimony was somewhat persuasive because his opinions were based on observations of Plaintiff that must be considered and he had the opportunity to observe her on a daily basis and had been able to note her behavior and progress in school.  (AR 21.)

The ALJ found that a July 2020 consultative examination noted Plaintiff was able to communicate her needs, participate in 91% of her school day in regular classes, plays travel softball at a competitive level, and listens and follows the rules.  (AR 20, 309-10.)  The examination showed that Plaintiff was responsive and engaged with more difficult tasks, and obtained a full I.Q. score of 81, but she demonstrated adaptive skills.  (AR 20, 312-14.) Dr. Myers ruled out any intellectual disability and while she demonstrates cognitive weaknesses, she also has many strengths such as working memory.  (AR 20, 312-13.)

The ALJ found most persuasive the opinion of Dr. Seward.  (AR 21.)  Testing on an August 2021 consultative examination by Dr. Seward showed that concentration was adequate, and Plaintiff obtained a full I.Q. score of 78 and a verbal compensation score of 75.  (AR 20, 331.)  Dr. Seward diagnosed Plaintiff with borderline intellectual functioning.  (AR 20, 333.)  Dr. Seward found that Plaintiff moderately limited in her ability to understand and respond to increasingly complex requests, instructions, or questions in an age-appropriate manner and has mild limits in her ability to understand, initiate or use language in an age-appropriate manner, engage in and perform age-appropriate self-care, integrate socially with peers and adults, and engage in, perform, and sustain an activity for a period of time.  (AR 21, 333-34.)

The ALJ found the hearing testimony of Dr. Bradshaw that Plaintiff borderline intellectual functioning was severe but did not meet or functionally equal the relevant childhood listings to be persuasive.  (AR 22, 40.)  He also opined the claimant's physical impairments were nonsevere and concluded Plaintiff's intellectual disability caused marked limitation in her ability to acquire and use information.  (AR 22, 41, 42.)  In finding this opinion persuasive, the ALJ noted that Plaintiff is successfully completing her academic work within the guidelines of her IEP, keeping her grades up, and playing softball competitively.  She has many friends, tutors others in math, and has no behavioral concerns.  She is hard on herself as she struggles academically which lowers her self-esteem, but she is not taking any medication and persevering.  (AR 22.)

The ALJ gave germane reasons to credit the opinions of the medical providers over Mr. Weaver's testimony that Plaintiff was below grade level.

The Court finds that the ALJ gave germane reasons to discount Ms. Hermosillo's and Mr. Weaver's testimony regarding Plaintiff's impairments.   He considered the other evidence in the record to reasonably determine that Plaintiff's impairment in acquiring and using information was marked and not extreme.  While Plaintiff argues for a different result, substantial evidence in the record supports the finding of a marked impairment.   If the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154.

**V.**

**CONCLUSION AND ORDER**

1    In conclusion, the Court denies Plaintiff's Social Security appeal and finds no harmful error

2  warranting remand of this action.

3    Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the

4  Commissioner of Social Security is DENIED.   It is FURTHER ORDERED that judgment be

5  entered in favor of Defendant Commissioner of Social Security and against Plaintiff V.M.   The

6  Clerk of the Court is directed to CLOSE this action.

7

8  IT IS SO ORDERED.

9  Dated:   **August 12, 2024**    _____

UNITED STATES MAGISTRATE JUDGE